IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MAJD AL-SHARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, f/k/a BLITZ HOLDINGS, LLC; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC; WAL-MART STORES, INC.; and WAL-MART STORES EAST, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff, Majd Al-Shara, both individually and as biological parent of now deceased minor child, Aliaa Al-Shara, complaining of Blitz U.S.A., Inc. Blitz U.S.A., Inc.; LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC; Kinderhook Industries, LLC; Kinderhook Capital Fund II, L.P.; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE Holdings, LLC; F3 Brands, LLC (collectively "Blitz"); Wal-Mart Stores, Inc.; and Wal-Mart Stores East, L.P. (collectively "Wal-Mart"), and alleges the following:

## INTRODUCTION

On or about September 19, 2010, a gasoline can (hereinafter "subject gas can") manufactured by Blitz and sold by Wal-Mart exploded out of its fill opening, covering Aliaa in burning liquid gasoline, causing Aliaa to suffer third degree burn injuries over almost the entirety of her body. Aliaa was conscious at the scene and able to communicate. She suffered extreme

pain waiting for medical attention and even thereafter. Majd Al-Shara was also severely burned about his arms and suffered extreme emotional distress and psychological injuries as well. This action is brought against the Defendants to recover all damages to which Plaintiff is entitled as a result of the severe injuries and damages he sustained as set forth herein.

**PARTIES**

1. Plaintiff resided in the state of Michigan at the time this accident occurred and spent months in jail in the state of Michigan after being accused of committing a crime he did not commit and then INS holding prior to being sent home to Jordan. Plaintiff was Aliaa Al-Shara's biological father and raised her along with her mother from the time she was born until the time of her death.

2. Defendant, Blitz U.S.A., Inc. is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma. Blitz may be served with process by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

3. Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4. Defendant Kinderhook Industries, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

5. Defendant Kinderhook Capital Fund II, L.P. is a Delaware limited partnership that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6. Defendant Blitz Acquisition Holdings, Inc. is a Delaware corporation that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7. Defendant Blitz Acquisition, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8. Defendant Blitz RE Holdings, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9. Defendant F3 Brands, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

10. Defendant Wal-Mart Stores, Inc. is a Delaware corporation that does business in the State of Michigan and maintains its principal place of business in the State of Arkansas. Wal-Mart Stores, Inc. may be served with process by serving its registered agent, The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025.

11. Defendant Wal-Mart Stores East, L.P. is a Delaware limited partnership that does business in the State of Michigan and maintains its principal place of business in the State of Arkansas. Wal-Mart Stores East, L.P. may be served with process by serving its registered agent, The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00),

exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and Defendants.

13. Venue is proper in the District Court of the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in whole or in part within this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

14. Blitz is in the business of designing, marketing, manufacturing and selling portable plastic gasoline cans.

15. Blitz designed, manufactured, marketed and sold a model of gas can known as the Blitz Self Vent Can (hereinafter "can").

16. Majd owned two Blitz cans, a five gallon and a one gallon, both of the self vent model which was sold by Blitz to Wal-Mart for distribution across the state of Michigan.

17. The one gallon can was purchased by Majd at a local Wal-Mart less than one year prior to the incident which occurred on or about September 19, 2010. The can contained gasoline at the time of the incident.

18. On or September 19, 2010, Majd's wife took their son to a Christian rock concert, leaving Majd home to cook dinner for their six year-old daughter, Aliaa.

19. Majd went out back to a fire pit to begin to grill some chicken he had been marinating when he realized he was out of charcoal lighting fluid.

20. Majd went into his shed to see if he could find anything with which to light a fire to cook dinner when he saw a five gallon Blitz self venting gas can that was missing its yellow cap and was full of gasoline. The gasoline had been sitting in the garage in that condition for many months.

21. Majd also saw a one gallon Blitz self venting can that was empty. Majd thought that if he put a small amount of gasoline in the small can that it would be safe to use to ignite the charcoal.

22. Majd took the can and poured a small amount of gasoline on the charcoal and attempted to light it. When the fire did not light, he poured additional gasoline on the charcoal twice. An ember in the charcoal ignited the gasoline vapors, they flashed back into the gas can, and the gas can, which had not been designed with a flame arrestor in its fill opening, exploded sending burning liquid gasoline and flame several feet out of its spout, covering Aliaa.

23. Majd repeatedly attempted to put out the flames on his daughter with his own body but each time he thought that she was extinguished, Aliaa's body and clothing reignited. Finally, with approximately a dozen of his neighbors looking on, Majd got the flames out.

24. Aliaa looked at her father and said, "Daddy, did something bad happen."

25. Aliaa suffered third degree burns over more then 90% of her body and struggled to survive in a burn unit for three days until she finally died. Majd received at least second or third degree burns to his arms which received virtually no treatment.

26. On the second day, Majd Al-Shara was asked by the local authorities to come to the police station, where he was interrogated. Because the police did not understand that a gas can could explode in the manner Majd described, the police arrested Majd and ultimately threatened to charge him with murder.

27. Majd Al-Shara was in jail at the time Aliaa died in the burn unit.

28. The authorities refused to allow Majd Al-Shara to attend his daughter's funeral.

29. Blitz, when contacted and asked whether their gas cans exploded, commented that they met all applicable standards despite the fact that they knew their cans could explode and

knew Majd Al-Shara was in jail due to the authorities' lack of understanding about the danger caused by the Blitz gas cans.

30. Ultimately, the federal government, through the Bureau of Alcohol, Tobacco and Firearms (referred to herein as "ATF"), conducted testing that proved that the explosion described by Majd Al-Shara was all too real of an occurrence. Thirteen of the 17 Blitz cans tested by the ATF exploded in the manner described by Majd. As a result of the testing, the government did not prosecute Majd Al-Shara for murder.

## CLAIMS FOR RELIEF

## COUNT I – NEGLIGENCE AS TO BLITZ ONLY

31. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

32. Blitz owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care under the circumstances in its design, manufacture, assembly, marketing, distribution and sale of the subject gas can.

33. Blitz ignored and/or breached that duty by its negligent acts and/or omissions because Blitz failed to take reasonable and/or ordinary care by:

A. Failing to design and produce a reasonably safe can;

B. Designing, manufacturing, assembling, marketing, distributing, and selling a can that was unreasonably dangerous;

C. Placed into the stream of commerce a can that was defective in design an d manufacture;

D. Placed into the stream of commerce a can that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a can that was unfit for its intended and anticipated use;

F. Placed into the stream of commerce a can that was likely to and did cause injury during its ordinary and/or foreseeable use;

G. Placed into the stream of commerce a can that contained manufacturing defects that increased the risk of explosion;

H. Failed to appropriately investigate and incorporate a flame arrestor in the product design;

I. Failed to properly test its can and prototypes thereof regarding the risk of internal explosion and/or the use flame arresting material;

J. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of gas cans and/or gasoline injuries;

K. Failed to take subsequent remedial measures such as post-sale warnings and/or to recall the can after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

L. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the can to the Consumer Product Safety Commission;

M. Sold the can when it knew it posed an unreasonable risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility;

N. Failed to investigate consumer use of its cans with regards to starting fires and/or exposure to ignition sources and failed to incorporate the knowledge the did have into the design of their can through a standard FEMA design analysis.

O. On at least two occasions, Blitz halted projects to equip its can with flame arrestors for financial and strategic legal reasons as opposed to safety considerations despite the fact that Blitz new that people would be severely burned and/or die due to their actions;

P. Blitz spoliated evidence and failed to issue a litigation hold during ongoing litigation which would tend to prove Plaintiff's allegations that Blitz is liable to Plaintiff.

34. As a direct and proximate result of Blitz's negligent acts and/or omissions, the can that caused Plaintiff's injuries was placed into the stream of commerce, in a defective and unreasonably dangerous condition, acting with complete indifference to, and in willful, conscious disregard for the safety of Plaintiff, and other foreseeable plaintiffs. After discovery is conducted, Plaintiff reserves the right to seek leave of the Court to amend his Complaint to seek punitive damages against Blitz for gross negligence.

35. Plaintiff's injuries and the manger in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

**COUNT II – BREACH OF WARRANTY**
**AS TO BLITZ ONLY**

36. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

37. Blitz, by and through the sale of its portable gas cans, impliedly warranted to the consumer and/or foreseeable users, such as Plaintiff, that the container was fit for its ordinary and foreseeable purposes.

38. Plaintiff made ordinary use of the container in reliance on said warranties.

39. Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purpose of storing gasoline rendering it unreasonably dangerous.

40. Blitz breached its implied warranties by one or more of the following respects, among others:

A. Failure of the gas can itself and by improper marketing to an unknowing consumer market;

B. Failure to equip the gas can with a flame arrestors and/or other safety devices to make the gas can safe for its foreseeable environment;

C. Failure to provide adequate warnings regarding the increased risk of gasoline when stored in the Blitz gas can;

D. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility and given that it was intended for use in environments where it is foreseeable that ignition sources will be present, the can was not fit for its ordinary purpose;

E. Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

F. Placed on the market a gas can which was unfit for its intended use and foreseeable environment;

G. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

H. Failure of the gas can itself and by improper marketing to an unknowing consumer market;

I. Failure to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

J. Failed to provide adequate warnings;

K. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility, and given that it was intended for use in environments where it is foreseeable that ignition sources will be present, the can was not fit for its ordinary purpose;

L. Blitz knew or should have known of feasible alternative container and closure designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

41. Plaintiff's injuries, Aliaa's death and injuries and the manner in which these events occurred were reasonably foreseeable to Blitz, which had actual and constructive knowledge from the industry, national publications, media reports, consultations, market studies, prior claims, executive/employee personal experience and prior lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans that lacked flame arrestors.

42. As a direct and proximate result of said breach of warranty, Plaintiff and Aliaa suffered severe burn injuries which led to Aliaa's death.

**COUNT III – PIERCING THE CORPORATE VEIL AS TO BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, F/K/A BLITZ HOLDINGS, LLC; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC**

43. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

44. On or about September 21, 2007, the Elmburg family sold Defendant Blitz U.S.A., Inc. to an investment group comprised of Kinderhook Industries, LLC, which is a New York-based private equity firm, and members of Blitz senior leadership including Rocky J. Flick, Blitz's current CEO and director, Chuck Neal, Blitz's current director, and Jay Pearson, Blitz's current director.

45. Coinciding with or sometime after the sale of Blitz U.S.A., Inc. to Kinderhook Industries, LLC and members of Blitz U.S.A.'s senior management, a complicated and opaque corporate ownership structure was created by the new owners consisting of the defendant Delaware limited liability companies, corporations, and limited partnerships, Blitz Acquisition,

LLC, Blitz RE Holdings, LLC, Blitz Acquisition Holdings, Inc., LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC), Kinderhook Capital Fund II, LP, and Kinderhook Industries, LLC.

46. Defendant Blitz U.S.A., Inc. is currently a wholly owned subsidiary of Blitz Acquisition, LLC. Defendant Blitz RE Holdings, LLC is a wholly owned subsidiary of Blitz Acquisition, LLC. Defendant Blitz Acquisition, LLC is a wholly owned subsidiary of Blitz Acquisition Holdings, Inc. Defendant Blitz Acquisition Holdings, Inc. is a wholly owned subsidiary of LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC). Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) is a wholly or partially owned subsidiary of Defendant Kinderhook Capital Fund II, LP. Defendant Kinderhook Capital Fund II, LP is a wholly or partially owned subsidiary of Defendant Kinderhook Industries, LLC.

47. The Defendants' corporate structure is a sham created and used to perpetuate a fraud on Plaintiff and other plaintiffs in gas can product liability lawsuits by transferring substantial, valuable assets out of Blitz U.S.A., Inc. and purposefully keeping it grossly undercapitalized so that Plaintiff and other creditors will be unable to collect judgments.

48. An entity is considered an alter ego of its parent or subsidiary where the companies have the same management, business operations or purposes, equipment and facilities, customers, management and supervision, and owners and where maintaining the fiction of separate corporate existence would sanction a fraud or promote injustice.

49. At the time the Elmburg family sold Blitz U.S.A., Inc. to Defendant Kinderhook Industries, LLC, Kinderhook knew that Blitz had been sued by numerous individuals who claimed they had received devastating burn injuries and death in explosions of Blitz gas cans, and Kinderhook knew that there were numerous such lawsuits pending and that there was a great likelihood that there would be many more suits filed as a result of gas cans already sold. In spite

of this knowledge, Kinderhook on its own and through its sham subsidiaries proceeded with the purchase under a scheme to immediately and in the future remove substantial valuable assets into newly formed entities for the purpose of preventing injured plaintiffs from recovering on their claims.

50. Defendants Kinderhook Industries, LLC, LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) and Kinderhook Capital Fund II, LP exercise complete dominion and control over the other subsidiary entities listed above and Blitz U.S.A., Inc. such that the subsidiaries are the alter egos of the parent companies, the parent companies are the alter egos of the subsidiaries, and they are the agents of and instrumentalities and conduits for one another. Defendants' employees, officers, directors and agents are members of the Board of Directors and officers of Blitz U.S.A., Inc.

51. Defendants Kinderhook Industries, LLC, LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) and Kinderhook Capital Fund, II, LP have used their control to cause Defendant Blitz U.S.A., Inc. and their other subsidiary entities listed above to make transfers of assets and incur obligations to and between the various entities and/or to other unknown companies and individuals in order to leave Blitz U.S.A., Inc. undercapitalized and insolvent and with actual intent to defraud Plaintiff and other creditors.

52. Defendant F3 Brands, LLC was incorporated in Delaware on May 17, 2011 and was identified by Blitz U.S.A., Inc. on October 4, 2011 as a wholly owned subsidiary of Blitz U.S.A., Inc.

53. Prior to October 4, 2011, Blitz identified F3 Brands, LLC as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

54. Since May 17, 2011, substantial assets consisting of Blitz U.S.A., Inc.'s non-gas can product lines, manufacturing equipment and other assets have been diverted and transferred to F3 Brands, LLC.

55. On October 4, 2011, Blitz U.S.A., Inc. disclosed that it has transferred assets to Blitz Acquisition, LLC for the purpose of Blitz Acquisition, LLC's purchase of a Canadian company identified by Mr. Flick as "Reliance Holdings."

56. Prior to October 4, 2011, Blitz identified "Reliance Holdings" as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

57. Defendants have taken or caused to be taken the property of Blitz U.S.A., Inc., depriving Blitz of the means of paying its debts, enabling it to practically place itself beyond the reach of its creditors, and are thereby liable for Blitz's debts.

58. Plaintiff seeks to pierce the corporate veil on the grounds of fraud and alter ego in order to hold each of these Defendant entities liable for any judgment Plaintiff may obtain against Blitz U.S.A., Inc.

## COUNT IV – UNIFORM FRAUDULENT TRANSFER ACT MICH. COMP. LAWS ANN. §§ 566.31 – 566.43 AS TO BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, F/K/A BLITZ HOLDINGS, LLC; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC

59. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

60. Plaintiff is the creditor of Blitz U.S.A., Inc.

61. The Defendants' corporate structure is a sham created and used to perpetuate a fraud on Plaintiff and other plaintiffs in gas can product liability lawsuits by transferring substantial valuable assets out of Blitz U.S.A., Inc. to the Defendants and others and

purposefully keeping Blitz grossly undercapitalized so that Plaintiff and other creditors will be unable to collect judgments. Blitz U.S.A., Inc. has transferred assets and incurred obligations with the actual intent to hinder, delay and defraud Plaintiff and Blitz U.S.A., Inc.'s other debtors.

62. Since May 17, 2011, substantial assets consisting of Blitz U.S.A., Inc.'s non-gas can product lines, manufacturing equipment and other assets have been diverted and transferred to F3 Brands, LLC. Additionally, Blitz U.S.A., Inc. has transferred assets to either Blitz Acquisition Holdings, Inc. and/or Blitz Acquisition, LLC, which assets were used to purchase a Canadian company identified as "Reliance Holdings." Blitz U.S.A., Inc. has fraudulently transferred assets to its owners and directors in the form of excessive executive compensation or other payments in preference over its creditors. All of these transfers have been made with the actual intent to hinder, delay or defraud Plaintiff and/or other creditors of Blitz.

63. Plaintiff believes that there have been additional fraudulent transfers of assets from and/or obligations incurred by Defendant Blitz U.S.A., Inc. to its parents, insiders, and other transferees, the details of which are yet unknown, which were made with actual intent to hinder, delay or defraud Plaintiff and/or other creditors of Blitz.

64. These transfers of assets from and/or obligations incurred by Defendant Blitz U.S.A., Inc. have left it with a negative net worth and rendered it grossly undercapitalized, insolvent and unable to satisfy Plaintiff's claim.

65. Pursuant to Mich. Comp. Laws Ann. § 566.37, Plaintiff seeks one or more of the following forms of relief against Defendants and/or other transferees of assets from Blitz U.S.A., Inc.:

a. Avoidance of the transfers and obligations to the extent necessary to satisfy Plaintiff's claim;

b. Attachment against the assets transferred or other property of the transferee(s);

c. An injunction against further disposition by the Defendants or transferee(s) of assets transferred or of other property;

d. Appointment of a receiver to take charge of the assets transferred or of other property of the transferee(s); and/or

e. Any other relief the court determines appropriate.

## COUNT V – NEGLIGENCE AS TO WAL-MART ONLY

66. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

67. Wal-Mart owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its marketing, distribution and sale of the Blitz can.

68. Wal-Mart had actual knowledge of the life-threatening and life ending dangers posed by a gas can sold without a flame arrestor.

69. Wal-Mart had been sued prior to selling the can purchased by Majd Al-Shara at Wal-Mart, and Wal-Mart's highest executives had even joked about people using gasoline to start fires and gas cans being good when they didn't explode.

70. Wal-Mart had its own risk analysis program for its products and failed to appropriately categorize the Blitz can as a high risk product and/or to recall or stop selling the product due to its dangers.

71. Wal-Mart has a significant percentage of the gas can market in the United States, and its buyers "squeeze" suppliers when they fail to take action with a product in a manner Wal-Mart wishes.

72. In fact, Wal-Mart had actively participated in the design of the can in question by making certain demands with regard to its spout and specifically insisting that Blitz change its design. Blitz had acquiesced to Wal-Mart's demands and the result was the can, designed without a flame arrestor, that was purchased by Majd Al-Shara and ultimately injured Majd and killed his daughter.

73. Wal-Mart failed to act as a reasonable retailer, knowingly marketing, selling and even seeking to increase the sales of a product that caused severe burn injuries and/or death to Wal-Mart consumers at the time the can was sold by Wal-Mart.

74. As a direct and proximate result of Wal-Mart's negligence, the can was marketed, distributed and sold in a defective condition, and it was unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons such as Plaintiff.

75. Plaintiff's injuries, and the manner in which they occurred, were reasonably foreseeable to Wal-Mart, which knew or should have known that individuals such as Plaintiff were being severely burned when encountering Blitz gas containers, including the subject can.

76. As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Plaintiff suffered the injuries and harms outlined in this Complaint.

## COUNT VI – BREACH OF WARRANTY AS TO WAL-MART ONLY

77. Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pleaded herein.

78. Wal-Mart is a merchant of gas cans.

79. In selling and placing the gas can into the stream of commerce, Wal-Mart impliedly warranted that the gas can was merchantable and fit for the ordinary, anticipated and foreseeable purposes for which it was intended to be used.

80. Wal-Mart breached said implied warranty in one or more of the following respects, among others:

A. Wal-Mart sold a gas can without a flame arrestor and/or other safety devices, therefore making it unfit for ordinary use, given that Wal-Mart knew it would be exposed to potential ignition sources;

B. Wal-Mart participated in and had impacted the design of Blitz's gas cans and had the power to do the same, which it had exerted on Blitz;

C. Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers it sold despite Wal-Mart's extensive knowledge of gasoline given its sale of the same;

D. Wal-Mart sold Blitz gas cans that contained manufacturing defects;

E. Wal-Mart knew or should have known as the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility thereby rendering the can unfit for ordinary use by average consumers;

F. Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor

ignition, and failed to offer such cans for sale and instead sold the defective subject gas can that was not appropriate for its ordinary anticipated use;

81. As a direct and proximate result of Wal-Mart's breach of warranty, Plaintiff suffered severe burn injuries.

82. As such, Wal-Mart is liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows on all Counts:

1. Past medical expenses in an amount according to proof;
2. Future medical expenses in an amount according to proof;
3. Loss future income earning capacity in an amount according to proof;
4. Past and future pain and suffering;
5. Past and future psychological damage;
6. Permanent scarring and loss of the enjoyment of life;
7. All damages allowed pursuant to Michigan's Wrongful Death Statute for Aliaa's death.
8. Costs and expenses;
9. For such other relief as the Court deems just and proper.

## TRIAL BY JURY

Pursuant to FRCP 38, Plaintiff hereby demands a Jury Trial.

/s/ RAMONA C. HOWARD
MCKEEN & ASSOCIATES, P.C.
645 Griswold Street, Suite 4200
Detroit, Michigan 48226
(313) 961-4400
rchoward@mckeenassociates.com
P48996

DATED: November 9, 2011