# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

MAJD AL-SHARA,

Plaintiff,

Case No. 11-cv-14954
Hon. Paul D. Borman

vs.

WAL-MART STORES, INC.
and
WAL-MART STORES EAST, L.P.,

Defendants.

---

DIANE M. BRENEMAN (NOT SWORN)
STACY L. DUNGAN (NOT SWORN)
Breneman Dungan, LLC
311 Delaware
Kansas City, MO 64105
(816) 421-0114
db@litigationkc.com
sd@litigationkc.com

NICOLE M. WRIGHT (P63513)
ZAUSMER, KAUFMAN, AUGUST,
CALDWELL & TAYLER, PC
Attorneys for Defendant Wal-Mart Stores,
Inc. and Wal-Mart Stores East, L.P.
31700 Middlebelt Rd., Suite 150
Farmington Hills, MI 48334
(248) 851-4111
nwright@zkact.com

RAMONA C. HOWARD (P48996)
McKeen Associates
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400
rchoward@mckeenassociates.com

---

# WAL-MART DEFENDANTS'
# MOTION FOR A STAY OF PROCEEDINGS PURSUANT TO THE BANKRUPTCY

NOW COME Defendants, Wal-Mart Stores East, L.P., incorrectly sued as Wal-Mart

Stores, Inc.  (hereafter "Wal-Mart) by and through their attorneys, Zausmer, Kaufman, August,

Caldwell & Tayler, PC, and moves this Honorable Court for a stay of proceedings pursuant to

this Court's inherent power to manage its docket and for the reasons more fully set forth in this Motion and in the accompanying brief states as follows:

1.      On November 9, 2011, Plaintiff in the above-captioned matter filed the instant suit against then-defendants Blitz, U.S.A., Inc., f/k/a Blitz Holdings, LLC; Kinderhook Capital Fund II, L.P.; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE Holdings, LLC; F# Brands, LLC; Wal-Mart Stores, Inc.; and Wal-Mart Stores East, L.P.  Docket Entry No. 1.

2.      On or about November 9, 2011, bankruptcy proceedings were instituted in the United States Bankruptcy Court for the District of Delaware by then-defendants Blitz, U.S.A., Inc.; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz Re Holdings; and F3 Brands, LLC (the "Debtors") by their filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "Bankruptcy Code").  See Docket No. 4, Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings.

3.      The Debtors' Chapter 11 cases are now pending before the Honorable Peter J. Walsh, United States Bankruptcy Judge, and are being jointly administered for procedural purposes under the caption *In re Blitz U.S.A., Inc.*, Chapter 11, Case No. 11-13603. *Id.*

4.      The Debtors asserted that as of the commencement of the Chapter 11 cases, the instant lawsuit as to theDefendants listed above in paragraph 2 was subject to an automatic stay pursuant to 11 U.S.C. §§ 362(a)(1) & (6).  *Id.*

5.      In the bankruptcy proceedings, the Debtors filed an adversary proceeding requesting declaratory and other relief (the Adversary Proceeding) in which it sought "a temporary restraining order and preliminary injunction extending the automatic stay for PCGC-

2

related[1] claims to Blitz's largest reseller, Wal-Mart….and any other resellers of PCGCs that otherwise would be named as defendants in Future PCGC Actions." (**EXHIBIT A**, Docket No. 15, Case No. 11-13606, Adversary Proceeding, ¶ 2). This paragraph further states that "[t]he PCGC-related claims are potentially among the largest unsecured claims pending against the estate." *Id*.

6.      In the Adversary Proceeding, the Debtors further assert that Wal-Mart is Blitz's "largest customer" and "purchases PCGCs from Blitz for retail to its retail customers pursuant to a Supplier Agreement dated March 11, 2010. *Id*., ¶ 12. See also **EXHIBIT B**, Supplier Agreement (being filed under seal).

7.      Paragraphs 13 through 38 of the Adversary Proceeding lists the claimants asserting claims or pursuing litigation against the Debtors in PCGC-related actions. *Id*., ¶¶ 13-38.

8.      Plaintiff herein is not among those listed.

9.      However, on November 18, 2011, counsel for Plaintiff, Diane Breneman, filed a "Verified Statement" pursuant to Fed. R. Bankr. P. 2019(A) naming Plaintiff as a Party in Interest / Creditor in the bankruptcy proceedings. (**EXHIBIT C**).

10.     In this verified statement, counsel also names Lori Shickel, Karen Guenott-Kornegay, and Robert Jacoby as additional parties in interest / creditors in the bankruptcy proceedings that they represent in litigation against the Debtors and/or Wal-Mart in other jurisdictions. *Id*.

11.     These named individuals and/or parties are specifically referred to in the Adversary Proceeding by the Debtors seeking to enjoin litigation against Wal-Mart. (**EXHIBIT**

---

[1] "PCGC" is an acronym designated by the Debtors in the bankruptcy proceedings which stands for "portable consumer gas container". (**EXHIBIT A**, Docket No. 15, ¶ 1, Case No. 11-13606, Adversary Proceeding).

**A**, Docket No. 15, Case No. 11-13606, Adversary Proceeding, ¶¶ 26 (Jacoby), 27 (Guenott-Kornegy); and 37 (Shickel)).

12.     These claimants and others referred to in the Adversary Proceeding have brought product liability actions against the Debtors and Wal-Mart alleging personal injury and/or death as a result of fires or explosions that allegedly arose when PCGCs manufactured by the Debtors and sold by Wal-Mart were used or stored in the vicinity of fire or other combustion sources. *Id*., ¶ 39.

13.     The Debtors note that Blitz and/or Wal-Mart have been named in thirty-five pending PCGC actions. *Id*., ¶ 40.

14.     The Debtors further note that the plaintiffs in these lawsuits, as in the instant one, have "typically alleged that their respective PCGCs exploded when they were using it to pour or 'splash' gasoline onto an existing fire or burning embers to facilitate combustion"; have asserted that the PCGCs failed to contain a flame arrestor; and have alleged various forms of causes of action sounding in product liability, including failure to warn, breach of warranty, etc. *Id*., ¶¶ 41-50.

15.     This Court may exercise its inherent authority to enter a stay of proceedings in a lawsuit where a defendant is an absolute indemnitee of the debtor in a bankruptcy proceeding to protect the debtor, the assets of the estate, and other claimants asserting claims against the debtor that are identical or similar to those being lodged against the defendant. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *Reliant Energy Servs., Inc. v. Enron Canada Corp.,* 349 F. 3d 816, 825 (5th Cir. 2003). See also *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 861-862 (6th Cir. 1993).

16.     A Court may also exercise its inherent authority to stay proceedings in a lawsuit in the interests of justice and to promote judicial efficiency. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *Kerotest Mfg. C. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). See also *Gray v Bush*, 628 F.3d 779, 785 (6th Cir. 2010) (quoting *Landis*, *supra* and stating that it may be appropriate to invoke this power where dictated by "weighing competing interests and maintaining an even balance").

17.     Pursuant to Local Rule 7.1, counsel for Defendants Wal-Mart explained the nature of this Motion and its legal basis, and requested, but did not obtain concurrence in the relief sought.

WHEREFORE, for the reasons stated in this Motion and brief in support, Defendants, Wal-Mart request this Honorable Court to stay these proceedings in the interests of justice and judicial economy.

Respectfully submitted,

ZAUSMER, KAUFMAN, AUGUST,
CALDWELL & TAYLER, PC

/s/ Nicole M. Wright

_____
NICOLE M. WRIGHT (P63513)
Attorneys for Defendant Wal-Mart
31700 Middlebelt Rd., Suite 150
Farmington Hills, MI 48334
(248) 851-4111
nwright@zkact.com

Date:  January 27, 2012

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

MAJD AL-SHARA,

Plaintiff,

Case No. 11-cv-14954
Hon. Paul D. Borman

vs.

WAL-MART STORES, INC.
and
WAL-MART STORES EAST, L.P.,

Defendants.

---

| | |
|---|---|
| DIANE M. BRENEMAN (NOT SWORN)<br>STACY L. DUNGAN (NOT SWORN)<br>Breneman Dungan, LLC<br>311 Delaware<br>Kansas City, MO 64105<br>(816) 421-0114<br>db@litigationkc.com<br>sd@litigationkc.com | NICOLE M. WRIGHT (P63513)<br>ZAUSMER, KAUFMAN, AUGUST,<br>CALDWELL & TAYLER, PC<br>Attorneys for Defendant Wal-Mart Stores,<br>Inc. and Wal-Mart Stores East, L.P.<br>31700 Middlebelt Rd., Suite 150<br>Farmington Hills, MI 48334<br>(248) 851-4111<br>nwright@zkact.com |

Ramona C. Howard (P48996)
McKeen Associates
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400
rchoward@mckeenassociates.com

---

# WAL-MART DEFENDANTS' BRIEF IN SUPPORT
# OF MOTION FOR A STAY OF PROCEEDINGS

NOW COME Defendants, Wal-Mart Stores East, L.P., incorrectly sued as Wal-Mart Stores, Inc. (hereafter "Wal-Mart), by and through their attorneys, Zausmer, Kaufman, August, Caldwell & Tayler, PC, and in support of its motion for a stay of these proceedings submits this brief in support.

## **STATEMENT OF ISSUES PRESENTED**

Whether, in the interests of justice and judicial economy, this Court should invoke its inherent authority to stay this lawsuit against Wal-Mart where Wal-Mart is an absolute indemnitee of the former Defendants, Blitz, U.S.A., et al., who are now the Debtors in bankruptcy proceedings in Delaware due in large part to multiple claims and lawsuits filed against them and Walmart alleging the same or similar claims arising out of nearly identical factual circumstances as those alleged in the instant case; where Plaintiff and those similarly situated have filed claims in the bankruptcy proceedings; and where the assets and interests of Wal-Mart, the Debtors and Plaintiff are inextricably intertwined and dependent on the outcome of the bankruptcy proceedings?

## **STATEMENT OF MOST-RELIED UPON AUTHORITY**

Wal-Mart refers the Court to the following cases as authority for the requested relief: *Landis v. North Am. Co.*, 299 U.S. 248 (1936); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855 (6th Cir. 1993); *Gray v Bush*, 628 F.3d 779 (6th Cir. 2010).

## SUMMARY OF ARGUMENT

Wal-Mart requests this Honorable Court to stay the proceedings in this lawsuit because it is an absolute indemnitee of the Debtors in the bankruptcy proceedings and is named as an additional insured on a policy or policies of insurance issued to the Debtors in the bankruptcy proceedings by virtue of a Supplier Agreement that Wal-Mart has with the Debtors.  (**EXHIBIT B**, Supplier Agreement (being filed under seal)).  The claims against Wal-Mart in this lawsuit are identical or nearly identical to dozens of other claims being asserted by various plaintiffs, including Plaintiff herein, in the Debtors' bankruptcy proceedings.  Any disposition, ruling or judgment as to Wal-Mart's liability as to the claims asserted by Plaintiff in the instant suit are inextricably intertwined with the Debtors' interests in the bankruptcy proceedings and with the assets of the bankruptcy estate.  Under these circumstances, Wal-Mart submits that this Court should enter a stay of these proceedings pending the Debtor's bankruptcy proceedings.

Second, Wal-Mart requests this Honorable Court to invoke its inherent powers to stay proceedings in the interests of justice and judicial economy.  Multiple claims and multiple claimants have filed nearly identical lawsuits in other courts and claims in the bankruptcy proceedings based on those underlying lawsuits.  Justice will best be served by an effort on the part of this Court and others to allow those claims which have been presented in the bankruptcy proceedings, including a claim of interest by Plaintiff in this case (**EXHIBIT C**), to be administered in a fashion that protects the bankruptcy assets and results in consistent results for all claimants.

## INTRODUCTION

Blitz, U.S.A., Inc. and affiliated parties (hereafter "the Debtors"), which were originally named defendants in this lawsuit, filed for bankruptcy protection in Delaware under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on November 9, 2011 (the same day

that Plaintiff's lawsuit was filed in this court).  *In re Blitz U.S.A., Inc.*, Chapter 11, Case No. 11-13603.  The Debtors are manufacturers of gas containers, which they refer to in the bankruptcy proceedings as portable consumer gas containers or (PCGCs).  See **EXHIBIT A**, Docket No. 15, ¶ 1, Case No. 11-13606, Adversary Proceeding.

Multiple claimants have filed product liability actions against the Debtors relating to the PCGCs, which generally allege injury and/or death as a result of explosions or fires that allegedly arose when the PCGCs were stored or used in the vicinity of fire or other combustion sources. *Id.*, ¶ 39.  Debtors and Wal-Mart have been named in at least thirty-five pending PCGC actions.  *Id.*, ¶ 40.

Wal-Mart purchased PCGCs from the Debtors and sold them at retail in its stores.  Wal-Mart and the Debtors entered into a supplier agreement (the Supplier Agreement) memorializing the terms and conditions of Wal-Mart's relationship with the Debtors in this regard.  (**EXHIBIT B**, Supplier Agreement (being filed under seal)).

Many of the plaintiffs' claims in these lawsuits against the Debtors have been stayed pursuant to 11 U.S.C. § 362(a) and now constitute claims in the United States Bankruptcy Court for the District of Delaware.  On November 18, 2011, Plaintiff's counsel filed a verified statement pursuant to Fed. R. Bankr. P. 2019(A) noting its representation of several of the claimants in the aforementioned lawsuits, as well as Plaintiff in the case *sub judice*. (**EXHIBIT C**).  Counsel for Plaintiff also represents Lori Shickel, Karen Guenott-Kornegay, and Robert Jacoby who are also parties in interest / creditors in the bankruptcy proceedings.  *Id*.  These parties are specifically referenced in the Adversary Proceeding filed by the Debtors. (**EXHIBIT A**, Docket No. 15, Case No. 11-13606, Adversary Proceeding, ¶¶ 26 (Jacoby), 27 (Guenott-Kornegy); and 37 (Shickel)).

The Debtors sought a temporary restraining order enjoining litigation against co-defendants such as Wal-Mart, due in large part to the fact that the Debtors had agreed to defend Wal-Mart in these lawsuits pursuant to the indemnity and defense provisions in the Supplier Agreement. (**EXHIBIT A**, Adversary Proceeding). While denying the specific relief requested, the bankruptcy judge recommended that Wal-Mart seek stays from the individual courts in which lawsuits were pending and recommended that the district court judges grant stays of the proceedings. The judge stated as follows:

> Look, why don't you take a – pick a particular case where the Debtor [Defendant] is sued and Wal-Mart is sued. Now the Debtor's out of the case. If I were Wal-Mart, I would say to the judge, "I'm going to be highly prejudiced by [the Debtor Defendant] dropping out, because that means that I have to try this matter twice." If I were the judge, I would say, "Stay." Put them on hold, 3 months, 6 months, see what happens in the bankruptcy.

> [**EXHIBIT D**, Transcript of First Day Motions, November 10, 2011, p. 47.]

In the instant case, the Debtors are contractually required to defend and indemnify Wal-Mart. Wal-Mart is an additional insured under policies secured by the Debtors pursuant to the Supplier Agreement. At least one of the Debtors' insurers has taken the position that all policy proceeds of the Debtors' insurance policies are property of the estate and that the automatic stay therefore precludes the insurer from advancing or paying policy proceeds for defense and/or settlement (i.e., indemnity) on behalf of Wal-Mart. As such, if this case is allowed to proceed against Wal-Mart in this Court, Wal-Mart will be forced to litigate without the defense to which it is entitled from the Debtors pursuant to the Supplier Agreement and without the possibility of indemnification from the Debtors, which is in large part guaranteed by the monies in the Debtors' insurance policies (monies which at least one insurer now claims is property of the bankruptcy estate).

Plaintiff's claim against Wal-Mart turns on whether Plaintiff will be able to establish liability against the Debtors, and whether Plaintiff can establish that Wal-Mart is not protected by legal provisions and defenses that Wal-Mart may assert under prevailing statutory law and the jurisprudence interpreting it. If Plaintiff is able to establish liability against Wal-Mart, the Debtors will be obligated to indemnify Wal-Mart. Moreover, the Debtors are obligated to provide legal defense for Wal-Mart.

To proceed with Plaintiff's claims against Wal-Mart without the participation of the Debtors will result in multiple trials of nearly identical issues addressed under the laws of the various jurisdictions in which the aforementioned lawsuits are pending against Wal-Mart. This will result not only in inconsistent legal determinations, but will also result in an incredible waste of judicial resources. It is Wal-Mart's position, therefore, that a stay should be imposed as to Plaintiff's claims against it in this lawsuit.

Wal-Mart is a global merchandiser specializing in affordable retail goods and services of all kinds. Wal-Mart's inventory consists of a large variety of diverse products. One such product is the portable plastic gasoline container manufactured by the Debtors. Wal-Mart requires all of its suppliers to enter into a Supplier Agreement which governs the terms and conditions by which Wal-Mart purchases merchandise. One of the terms and conditions of the Supplier Agreement is for the supplier to indemnify Wal-Mart. An exemplar of the contractual obligation is provided below:

**14. INDEMNIFICATION.** Supplier shall protect, defend, hold harmless and indemnify Company, including its officers, directors, employees and agents, from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false, arising out of any actual or alleged:

\*\*\*

4

(b) Death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged use of or latent or patent defect in, such Merchandise, including but not limited to (i) any actual or alleged failure to provide adequate warnings, labelings or instructions, (ii) any actual or alleged improper construction or design of said Merchandise, or (iii) any actual or alleged failure of said merchandise to comply with specifications or with any express or implied warranties of Supplier;

(c) Violation of any law, statute, ordinance, governmental administrative order, rule or regulation relating to the merchandise, or to any of its components or ingredients, or to its manufacture, shipment, labeling, use or sale, or to any failure to provide a Material Safety Data Sheet or certification;

* * *

Supplier shall promptly notify Company of the assertion, filing or service of any lawsuit, claim, demand, action, liability or other matter that is or may be covered by this indemnity, and shall immediately take such action as may be necessary or appropriate to protect the interests of Company, its officers, directors, employees and agents. Any and all counsel selected or provided by Supplier to represent or defend Company or any of its officers, directors, employees or agents shall accept and acknowledge receipt of Company's Indemnity Counsel Guidelines, and shall conduct such representation or defense strictly in accordance with such Guidelines. If Company in its sole discretion shall determine that such counsel has not done so, or appears unwilling or unable to do so, Company may replace such counsel with other counsel of Company's own choosing. In such event, any and all fees and expenses of Company's new counsel, together with any and all expenses or costs incurred on account of the change of counsel, shall be paid or reimbursed by Supplier as part of its indemnity obligation hereunder. Company shall at all times have the right to direct the defense of, and to accept or reject any offer to compromise or settle, any lawsuit, claim, demand or liability asserted against Company or any of its officers, directors, employees or agents. The duties and obligations of Supplier created hereby shall not be affected or limited in any way by Company's extension of express or implied warranties to its customers.

[**EXHIBIT B**, Supplier Agreement, February 3, 2010, p. 4, ¶ 14 (filed under seal)]

The basis of Plaintiff's claim in the instant suit is that the gas container manufactured by the Debtor and sold by Wal-Mart was defective in design and exploded after Plaintiff attempted to start a fire with gasoline. Although Wal-Mart is, under Michigan product liability law, a non-manufacturing seller, Plaintiff's claims against Wal-Mart are based, in part, on the allegation that

5

Wal-Mart had knowledge of a defective condition in the gas cans when it sold them, somehow participated in and/or impacted the design or manufacturing of these products, failed to provide adequate warning to consumers, was aware of other similar products without defects, and breached implied warranties of merchantability and fitness.  Wal-Mart vehemently denies these allegations.  Wal-Mart's position is that as a non-manufacturing seller, it simply sold the products involved in these cases to the consumers, and is otherwise subject to the law of Michigan concerning product liability actions against non-manufacturing sellers of goods.

The causes of action as alleged in Plaintiff's Complaint fall under the contractual indemnification obligation that the Debtors have to Wal-Mart.  Thus, the Debtors are potentially liable to Wal-Mart for the amount of any judgment obtained against it or settlement entered into, and for the costs and expenses (including attorneys fees and court costs) incurred by Wal-Mart for defense of these lawsuits, regardless of whether Wal-Mart is found to be liable to Plaintiff.

On November 9, 2011, citing the burden of multiple product liability suits, the Debtors filed for bankruptcy protection in the United States Bankruptcy Court of the District of Delaware under Chapter 11 of the Bankruptcy Code.  By operation of the "automatic stay" provisions set forth in 11 U.S.C. § 362(a), all proceedings against the Debtors were stayed at the time the bankruptcy petitions were filed.  See Docket No. 4, Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings.  Subsequently, Plaintiff voluntarily dismissed the debtors and filed an Amended Complaint naming only Wal-Mart as a Defendant in the instant lawsuit. Docket Nos. 8 and 25.

## LAW AND ARGUMENT

**I.     Wal-Mart's Interests and those of the Debtors in the Bankruptcy Proceedings are Nearly Identical Justifying the Requested Stay of Proceedings**

The United States Bankruptcy Code imposes an "automatic stay" prohibiting parties from undertaking certain actions against a bankruptcy debtor and/or its property, including an automatic stay of all actions and proceedings against the debtor or any attempt to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a).  The prohibition against the commencement or continuation of litigation against a bankruptcy debtor impacts the continuation of litigation against a third-party, such as Wal-Mart when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F. 3d 816, 825 (5th Cir. 2003).  There is just such an identity of interest here.

For example, the court in *A.H. Robins* found that an "identity of interest" sufficient to extend the automatic stay provision of 11 U.S.C. § 362 to include a non-debtor co-defendant could arise in cases in which the co-defendant was entitled to absolute indemnity from the debtor.  *A.H. Robins*, *supra* at 999.  Similarly, the Fifth Circuit has found that the "identity of interest" exception does apply if there is "claim of a formal tie or contractual indemnification ... between the debtor and nondebtor." *Reliant Energy*, *supra* at 825 (*citing Arnold v. Garlock, Inc.,* 278 F.3d 426, 436 (5th Cir. 2001)).

Finally, the Sixth Circuit, while recognizing that blanket stays of proceedings against non-debtor co-defendants are not ordinarily granted, where the claims of the plaintiff in an

instant case are so intertwined with the claims of numerous other parties asserting claims in the bankruptcy proceedings, a stay of proceedings actually protects the bankruptcy estate and the interests of those filing similar or nearly identical claims in the bankruptcy proceedings.  See *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 861-862 (6th Cir. 1993) (citing and distinguishing *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194 (6th Cir. 1983).  The Court in *A.H. Robins*, which was cited with approval by the Sixth Circuit in *Eagle-Picher*, *supra*, stated:

> [T]here are cases…where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants but…there must be "unusual circumstances" and certainly something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties.  This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to ***absolute indemnity*** by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

> [*Id.* at 999 (internal quotations and citations omitted) (emphasis added).]

This reasoning is especially sound where, as here, Wal-Mart, who is seeking the stay, is an absolute indemnitee of the Debtors in the bankruptcy proceedings, and by virtue of that designation Wal-Mart is entitled to receive monies from the Debtors for any liability imposed upon it as a result of the identical claims being asserted against the Debtors in the bankruptcy proceedings.

In the instant case, Plaintiff herein has, along with multiple other claimants, asserted nearly identical claims in the bankruptcy estate against the Debtors. (**EXHIBIT C**, November 18, 2011 Verified Statement filed by Plaintiff's Counsel in the Bankruptcy Proceedings).  See

also **EXHIBIT A**, ¶¶ 26, 27, 37, and 39-50.   Moreover, Walmart presents this Court with evidence of a formal contractual indemnification agreement between Wal-Mart and the Debtors that would render the Debtors liable not only for any judgment obtained against Wal-Mart at trial but also costs and fees incurred by Wal-Mart for its defense of this matter. (**EXHIBIT B**, Supplier Agreement (being filed under seal)).

Granting a stay in this proceeding is wholly appropriate under these circumstances. Allowing this cause of action to go forward against Wal-Mart would inevitably have an adverse impact on the estate of the Debtors and would potentially prejudice the Debtors, Plaintiff and other claimants in the bankruptcy proceedings.   The Debtors have intimated likewise by filing the Adversary Proceeding in the Bankruptcy Court seeking to stay all pending PCGC litigation against Wal-Mart. (**EXHIBIT A**).

Further, given that Plaintiff's claims against Wal-Mart are to be indemnified by the Debtors, the Debtors may find themselves bound by this court's judgment on Plaintiff's claims against Wal-Mart, despite the fact that claims against the Debtors have been transferred to Delaware. *See In re W.R. Grace & Co*., 386 B.R. 17, 32 (Bankr. D. Del 2008) (granting stay as to non-debtor defendants where the overlap of issues in the two proceedings would "duplicate expenses and unnecessarily divert if not deplete the resources and assets of the estate").

Moreover, at least one insurer of the Debtors has taken the position that the assets of its policies, in which Wal-Mart is an additional insured pursuant to the Supplier Agreement, are property of the bankruptcy estate.  *See Wedgeworth v. Fibreboard Corp*., 706 F.2d 541, 548 (5th Cir. 1983); *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984); *A.H. Robins*, 788 F.2d at 1001 (4th Cir. 1986).   As one insurer has represented to Wal-Mart, the proceeds of the Debtors' policies are property of the bankruptcy estate and that the automatic stay precludes the insurer from

advancing or paying policy proceeds for defense and/or settlement on behalf of Wal-Mart.  As such, if this case is allowed to proceed against Wal-Mart, it will be forced to litigate without the insurance protection and indemnity the Debtors are contractually obligated to provide pursuant to the Supplier Agreement.   Therefore, Plaintiff's claims against Wal-Mart should be stayed pending the resolution of the bankruptcy of the Debtor Defendant.

## II.   This Court Has Inherent Power to Stay the Instant Proceedings in the Interest of Judicial Efficiency

The decision whether to stay a particular action is within the inherent power of the courts and is discretionary.  *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936).  ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  A stay of proceedings is particularly appropriate where the underlying claims of a lawsuit involve common questions of fact to those related in consolidated claims and interests of parties in another action.  Under *Landis*, *supra*, courts have the power to exercise their inherent discretion to stay a case when doing so will promote judicial efficiency and not harm any of the parties.  The power to stay should be exercised based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952).  Pursuant to this Court's inherent power to manage its docket this case should be stayed against Wal-Mart.

If this case were to proceed in this Court as to Wal-Mart and in the bankruptcy court as to the Debtors, duplicative discovery, multiple hearings, and inconsistent results will likely ensue, causing inefficiencies and piecemeal litigation.  In situations similar to this case, courts have stayed proceedings against the co-defendants of debtors in bankruptcy where the failure to do so

would result in piecemeal litigation. *Hemmerle Indus., Inc. v. Kassuba*, 575 F.2d 513 (5th Cir. 1978) (court of appeals permitted an action by a plaintiff against co-defendants of a debtor to be stayed pending dissolution of the bankruptcy court's injunction because the bankruptcy and district court actions involved common questions).

A stay in the interests of justice and judicial economy is appropriate. Without a stay, the identical claims against Wal-Mart and the Debtors will be adjudicated in two different courts. This duplicative litigation could well result in inconsistent outcomes. The prejudice to all parties by being forced to litigate in two different courts could be avoided altogether by simply staying this action until a resolution has been reached by the Delaware Court, which now has jurisdiction over the underlying claims against the Debtors. Plaintiff, meanwhile, will not suffer any prejudice in light of a stay against Wal-Mart as they have an alternative avenue for adjudicating claims against the Debtors and need not rely upon a decision in this Court. (**EXHIBIT C**, Plaintiff's Counsel's November 18, 2011 Verified Statement Asserting Claim / Interest in Bankruptcy Proceedings on Behalf of Plaintiff). As a practical matter, staying this case against Wal-Mart would allow the Debtors and the Delaware Court time to determine how these claims should proceed, and how best any judgment might be satisfied, in light of the various procedural and financial issues that the Debtors must now confront, while causing no significant prejudice to Plaintiff.

WHEREFORE, for the reasons stated in this brief, Defendants, Wal-Mart requests this Honorable Court to stay these proceedings in the interest of justice and judicial economy.

Respectfully submitted,

ZAUSMER, KAUFMAN, AUGUST,
CALDWELL & TAYLER, PC

/s/ Nicole M. Wright
_____
NICOLE M. WRIGHT (P63513)
Attorneys for Defendant Wal-Mart
31700 Middlebelt Rd., Suite 150
Farmington Hills, MI 48334
(248) 851-4111
nwright@zkact.com

Date:  January 27, 2012

12

## <u>PROOF OF SERVICE</u>

I, Carson J. Tucker, an attorney with the law firm of Zausmer, Kaufman, August, Caldwell & Tayler, PC, hereby state and affirm that on January 27, 2012 I caused to be served the foregoing pleadings upon counsel of record in the above-captioned case by filing same with the Court's electronic court filing system.  This filing will send notification to the following attorneys of record for Plaintiff:

Diane M. Breneman;

Stacy L. Dungan; and

Ramona C. Howard

/s/ Carson J. Tucker_____

Zausmer, Kaufman, August, Caldwell & Tayler, PC
31700 Middlebelt Rd., Suite 150
Farmington Hills, MI 48334
(248) 851-4111
